## KENNEBEC LOG DRIVING COMPANY *vs.* COLUMBUS BURRILL & *al.*

Where goods have been sold and delivered, and the purchaser has not been molested in the enjoyment of the property, and no other claimant has appeared, the purchaser is bound to fulfil his contract, and cannot defend himself against an action for the price, by showing how the vendor obtained his title, and that the title is defective.

By the words " prize logs," as used in the special act of 1835, *c.* 590, incorporating the *Kennebec Log Driving Company,* and in the additional act of 1838, *c.* 496, are intended only those logs to which, from the loss of all distinguishing marks or evidences of property, no title can be established by any claimant.

Those acts do no more than to interpose the protecting care of the legislature, by enactments similar to those respecting lost goods, rather for the preservation than the destruction of individual property, so far as it could be done after the loss of all the usual evidences of it; and are constitutional.

If the provisions respecting a sale of prize logs at auction, are still in force, it is for the legislature or the proper authorities only, to punish the corporation for a violation; and the purchaser of logs at private sale cannot set it up as a defence to an action for the price.

The corporation, as such derives no benefit from the sale of prize logs, but the benefit is received by those members only who are owners of logs floating to market; it is not required, that the president of the corporation should be a member of it; and the president, having sold out all his logs, after the commencement of the suit and before the trial, is a competent witness for the corporation.

ASSUMPSIT upon an account annexed to the writ, to recover the value of certain logs, called prize logs, sold by the plaintiffs to the defendants at private sale.

At the trial before WESTON C. J. the plaintiffs read in evidence the private act of *March* 20, 1835, *c.* 590, incorporating them, and granting certain privileges, and the additional act of *March* 26, 1838, *c.* 496. The plaintiffs then offered *Stephen Weston* as a witness, and he was objected to by the defendants. He stated that he had owned logs in the river *Kennebec* from the commencement of the action until within a few days of the trial, but was not then an owner. He was then a director of the company and president of the board. He was admitted, and testified. It was proved that the logs had been in possession of the plaintiffs, and had been sold at private sale and delivered to the defendants. The

Ken. L. D. Com. *v.* Burrill.

jury returned a verdict for the plaintiffs, subject to two legal ques-
tions. First, whether it was competent for the legislature, by the
act, to give title to the company in the logs called prize logs. Se-
cond, as there is no provision that the company can hold property,
and as the act requires that prize logs shall be sold at auction,
whether they can maintain assumpsit upon an express or implied
promise, the sale not having been made at auction. If the witness
ought not to have been admitted, or if the Court should be of
opinion, that the action cannot be maintained upon either of those
grounds of objection, the verdict was to be set aside.

*Tenney,* for the defendants, argued in support of three proposi-
tions, and contended, that the verdict should be set aside, if either
objection was well taken.

1. *Weston was not a competent witness,* because he was inter-
ested, and because he was a party to the record. 7 *Mass. R.*
398 ; 12 *Mass. R.* 360 ; 16 *Mass. R.* 118 ; 7 *Pick.* 62 ; 3 *Stark.*
*Ev.* 1061 ; 1 *Wend.* 119 ; 4 *Wend.* 453.

2. The plaintiffs cannot recover, because they did not pursue
the provisions of the statute in selling at auction. A mode being
pointed out by statute, they can sell in no other way. 6 *Mass. R.*
40 ; 2 *Cranch,* 127.

3. It was not competent for the legislature, by these acts, to
give title to the company in the logs, called prize logs. The legis-
lature have no power to transfer the property of one to another,
even with compensation, and certainly not without. The acts are
in these respects unconstitutional and void. *Dickinson* v. *Hall,*
14 *Pick.* 217 ; *Baker* v. *Page,* 2 *Fairf.* 381 ; *Savage* v.
*Whitaker,* 3 *Shepl.* 24 ; *Constitution U. States, Art.* 1, §
10 ; *Const. Maine, Art.* 1, § 1, 11, 19 ; *Dartmouth College* v.
*Woodward,* 4 *Wheat.* 518 ; *Holden* v. *James,* 11 *Mass. R.* 395 ;
*Little* v. *Frost,* 3 *Mass. R.* 106 ; *Stevens* v. *Prop'rs Mid. Canal,*
12 *Mass. R.* 466 ; *Rice* v. *Parkman,* 16 *Mass. R.* 326 ; *Foster*
v. *Essex Bank, ib.* 245 ; *Inhabitants of Milford* v. *Learned, ib.*
215 ; *Stackpole* v. *Healey, ib.* 33 ; 2 *Cranch,* 87 ; *Society for*
*prop. Gospel* v. *Wheeler,* 2 *Gall.* 105 ; 7 *Johns. R.* 477 ; *Pro.*
*Ken. Pur.* v. *Laboree,* 2 *Greenl.* 275 ; *Lewis* v. *Webb,* 3 *Greenl.*
326 ; 2 *Kent,* 13, 339 ; *Allen* v. *McKeen,* 1 *Sumner,* 276 ; 1
*Black. Com.* 44 ; *Co. Inst.* 46.

*F. Allen* argued for the plaintiffs.

*Weston* was a competent witness. He was not a party, for the corporation is plaintiff. He had no interest, for he had sold out his logs, and was entitled to no dividend of the proceeds, if the plaintiffs recovered, and was under no liabilities which could be changed by a verdict either way.

The defence set up is a gross violation of good faith, in attempting to avoid payment for property purchased of the plaintiffs, and received from them, and appropriated by the defendants to their own use, and no others than the plaintiffs claiming payment, or demanding the property. These facts alone are sufficient to enable us to maintain the action, if both the propositions of the gentleman are determined in his favor.

If a fair construction of the acts require a sale at auction at any time, it is only during the year after they are taken up. During that time they are held in trust for any owners, who may show property. Afterwards they become the property of the plaintiffs, and they may dispose of them as they please. But if the acts do require a sale at auction, the defendants do not show any rights under the original owners, and cannot object to the mode of sale.

It is impossible for any one owner of logs to get them down the river to market, without interfering with the logs of others. The statute merely regulates the mode of doing it for the common good. The argument, which has been advanced, is founded upon an erroneous view of the facts. The property of one man is not transferred to another man, but this description of lost property is kept for one year for the owner, if any such appears; and if no claim is made, is then divided among the owners of logs in the river, in proportion to their ownership. This is for the benefit of the owners, as they receive a portion of the proceeds. If the logs were not secured they would soon become derelict property at sea.

The opinion of the Court was drawn up by

SHEPLEY J. — The defendants purchased of the corporation at private sale "certain logs called prize logs;" and this suit is brought to recover the amount agreed to be paid for them. They have not been molested in the appropriation of them to their use; and they have a right to call upon the corporation on an implied

Ken. L. D. Com. *v.* Burrill.

warranty for any loss arising from a defect of title. They do not attempt to prove the title at the time of sale defective by proving it to have been in some other person or corporation. There is no other claimant. The attempt is to shew how the corporation obtained its title; and that the title so obtained is a defective one. It might be a sufficient answer to such a defence to say, that the defendants are bound to fulfil their contract, and that nothing can excuse them but proof, that they have been deprived of the property by a paramount title, or at least that some one has made a claim upon them for the property or its proceeds.

It is not denied that the corporation had a good title, if the legislature might constitutionally convey one. This is denied on the ground that the logs were the private property of some unknown persons and that the legislature could not transfer that property to the corporation. The argument rests, it is believed, upon a misapprehension of the effect of the legislative provisions respecting what are called prize logs. It alleges, that the legislature deprives some one of his right of property in the logs and transfers it to another; but the acts do not fairly admit of such a construction. And if the construction were doubtful it would be the duty of the court to adopt the one, which would not infringe the right of private property. Under the designation of prize logs does the law include all logs not artificially marked, although the title may be otherwise clearly proved; or only those, to which from the loss of all distinguishing marks or evidences of property no title can be established by any private person? If the latter description only be included, the allegation that the legislature has attempted to interfere with the right of private property is without foundation. In the act of *February* 28, 1807, the legislature of *Massachusetts* described them as " all logs, masts, spars and other timber, the marks of which have been so defaced as not to be known, commonly called prize logs." And the act provided, that " any person or persons *not the owners thereof,* who shall take, carry away, sell, or mark anew, any such prize logs," should be subject to a penalty. It will be perceived, that the owners of any of that description of logs were allowed to take, sell, or mark them anew, if they could in any manner establish their title. In the act of *Feb.* 2, 1816, the description is, logs and other timber, " unmarked, or

on which the marks shall have been so defaced as not to be known, commonly called prize logs;" and any persons "not being owners of such prize logs," were prohibited from taking, selling, or marking them.

The provisions contained in the act of *Feb.* 28, 1807, were re-enacted in this State, *c.* 168, § 8. There was a provision in the act of 1825, *c.* 295, § 2, "that all the prize logs on which no mark can be found whereby to identify the owner or owners shall be considered the property of the log owners generally;" with a proviso that nothing contained in the act should be considered as relating "to any logs having no mark, the ownership of which can be proved by good and sufficient evidence."

The act of 1827, *c.* 355, § 2, relating to the *Kennebec* and *Dead Rivers,* authorized the assessors named in the act to direct the master driver "what mark shall be put on the prize logs having no mark," and directed, that "such master driver shall sell the same together with all such as may be found at any time having no mark." This act does not appear to have recognized directly the right of any one to establish his title to logs found without an artificial mark. It was repealed among others by the act of 1831, *c.* 521, § 8, and there was no provision made in that act respecting prize logs. By the act of 1832, *c.* 8, § 3, provision was made, that mill logs in the *Androscoggin River,* and its tributary streams, "commonly called prize logs, the ownership of which cannot be ascertained by artificial marks *or otherwise* shall be the property," of a certain committee; recognizing the right of any one to establish his private property in them by any competent proof.

The act incorporating this company, *Special Laws,* 1835, *c.* 590, § 4, provides, "that all logs usually denominated prize logs," "and not having thereon some mark for the purpose of designating the owner or owners thereof shall be the property of the company, and the master driver shall from time to time sell the same at public vendue;" "provided, however, any owner or owners of logs sold as aforesaid may within one year from and after the time of such sale, on proof of his or their property therein, recover of said company the proceeds of the sale thereof on paying the expenses of driving and sale." The additional act of 1838, *Spec. Laws,*

*c. 496*, repeals the fourth section of the former act and provides, that no person shall mark any logs " denominated prize logs" before the same shall have been sold by the company ; and that nothing in the act shall be construed so as to impair the exclusive right of the company to control and dispose of " all prize logs in *Kennebec* river." The provision, that owners might prove their property within a year after the sale, was not continued ; and a provision is inserted for a distribution of an equal share of the proceeds of all prize logs among all, though not members of the company, who shall have owned and floated logs in the river in proportion to the number owned. This provision was doubtless made upon the presumption, that the prize logs must have been originally the property of those who owned the logs in the river. And it was thought to be just, when they could no longer distinguish what each owned, that the proceeds should be applied to the benefit of each in proportion as he owned in all the logs floated. Taking into consideration all the legislative provisions, which have been made respecting this description of logs, there is little reason to contend, that the legislature has attempted to violate the right of private property. It does not appear to have designed, with the exception perhaps of one act repealed, to do more than interpose its protecting care by enactments similar to those respecting lost goods, rather for the preservation than the destruction of individual property, so far as it could be done after the loss of all the usual evidences of it.

The provision respecting a sale at public vendue was contained in the fourth section of the act of incorporation, and was repealed by the fourth section of the additional act, which however speaks of a sale by the company as if it had been provided for by some existing law. And if the provision may be regarded as still binding upon the company, it is for the legislature or the proper authorities only to punish the corporation for a violation of its provisions.

The officer of the corporation, if he may be regarded as a member of it, does not appear to have had any interest in the amount to be recovered in this suit. Nor did he come within the rule, which excludes the parties to the record. The corporation as such derives no benefit from the sale of the prize logs. A benefit is received by those members only, who are the owners of logs floated to market. The witness was not an owner of logs, and so not en-

titled to any benefit either as a member of the corporation or as an owner. If he were proved to be a member of the corporation, there would be a contingent liability to pay any costs which the defendants might recover "in default of company property to satisfy the execution." There is no other evidence, that he was a member, than the fact that he was one of the board of directors and its president. There is no provision in the act requiring such an officer to be selected from among the members, and the court cannot therefore conclude, that there was even a contingent liability for cost.

*Judgment on the verdict.*